LJF:RMT

**M-10-073**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -

MARIAN BARAN,
MIHAI MURINEANU,
FLORIN NECULA and
BOGDAN PARASCHIV,

     Defendants.

- - - - - - - - - - - - - - - - - -X

COMPLAINT

(T. 18, U.S.C. §
1029(b)(2))

EASTERN DISTRICT OF NEW YORK, SS:

     JOSEPH BORGER, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("USSS"), duly appointed according to law and acting as such.

     Upon information and belief, on or about and between June 19, 2009 and January 21, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants, MARIAN BARAN, MIHAI MURINEANU, FLORIN NECULA and BOGDAN PARASCHIV, together with others, did knowingly and intentionally conspire to possess 15 or more unauthorized access devices, which conduct affected interstate commerce, all in violation of Title 18, United States Code, Section 1029(a)(3).

     (Title 18, United States Code, Section 1029(b)(2))

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I know based on my training and experience that Automatic Teller Machine ("ATM") "skimming" device schemes typically work as follows: A skimming device (card reader) is placed over the card insertion slot of the ATM. The skimming device is placed directly over the factory installed card insertion slot and captures the magnetic strip information of any card that is later inserted into the ATM. The skimming device will remain on the ATM for a period of time until the participants in the skimming scheme remove it. The information on the skimming device is then downloaded and re-encoded onto other cards that have magnetic strips. The newly encoded card will act as a "clone" of the customer's authentic card.

2. On or about December 17, 2009, USSS agents, who were conducting surveillance, observed defendants BOGDAN PARASCHIV and MIHAI MURINEANU make multiple cash withdrawals from ATMs in Queens, New York. The banks targeted were two Chase branches, one Capitol One branch, one Dime Bank branch and the Polish/Slavic Credit Union. Bank investigators reported to USSS agents that all transactions made during the times PARASCHIV and

---

[1] Because the purpose of this Complaint is to establish only probable cause to arrest, I have not set forth a description of all the facts and circumstances of which I am aware.

3

MURINEANU were observed in the various banks were fraudulent. Bank surveillance video from the two Chase branches, the Dime Bank branch and the Polish/Slavic Credit Union all revealed that PARASCHIV and MURINEANU made the fraudulent withdrawals. Surveillance video from the Capitol One branch is not yet available.

3. On January 12, 2010, I received information and bank surveillance video from a Wachovia investigator that showed PARASCHIV and another individual who appears to be defendant MARIAN BARAN placing and removing a skimming device on a Wachovia ATM in Jersey City, New Jersey on or about June 19, 2009. That device captured account numbers from which more than $35,000 was later fraudulently removed at ATMs in Manhattan and Queens, according to bank investigators. Bank surveillance video showed that PARASCHIV personally made fraudulent withdrawals from those captured accounts totaling at least $900.

4. On January 19, 2010, I received information and bank surveillance video from a Wachovia investigator that showed PARASCHIV and BARAN placing and removing a skimming device on a Wachovia ATM in Union City, New Jersey on or about November 22, 2009. That device captured account numbers from which more than $1,800 was later fraudulently removed at ATMs in Manhattan and Queens, according to bank investigators.

5. During the night of January 21, 2010, USS agents, including myself, conducted surveillance on a residence where PARASCHIV has been observed to reside, at 37-14 Greenpoint Ave., Apt. 1F, Long Island City, New York (the "Apartment"). The Apartment has a private entrance that is visible from the street.

6. On that date, defendants BARAN, MURINEANU and FLORIN NECULA were observed departing together from the Apartment in a Silver Dodge Charger with a Florida license plate "593 LCM" (the "subject vehicle"). USS agents followed BARAN, MURINEANU and NECULA to Port Chester, New York, where the agents observed the subject vehicle parked near a Wachovia bank.

7. A USS agent then observed that an ATM skimmer had been placed on an ATM outside the Wachovia bank. The agent did not remove the skimmer at that time.

8. USS agents subsequently observed MURINEANU and NECULAR remove the ATM skimmer on the ATM outside the Wachovia bank.

9. USS agents then followed BARAN, MURINEANU and NECULA back to the Apartment, where they observed BARAN, MURINEANU and NECULA exit the subject vehicle and enter the Apartment.

10. Approximately 30 minutes later, USS agents observed PARASCHIV, BARAN and NECULA leave the Apartment, climb into the subject vehicle and drive to a Chase branch on Queens

Boulevard in Queens, New York, where they parked. USSS agents then arrested PARASCHIV, BARAN and NECULA.

11. USSS agents then returned to the Apartment and knocked on the door. Livia Fargaras, whose name appears on the lease for the Apartment, answered the door and subsequently gave written and oral permission for the USSS agents to search the premises. That search revealed numerous ATM skimming devices, laptops, white plastic cards and other access devices numbering in excess of 15. USSS agents also observed MURINEANU in the residence and arrested him at that time.

WHEREFORE, your deponent respectfully requests that defendants MARIAN BARAN, MIHAI MURINEANU, FLORIN NECULA and BOGDAN PARASCHIV be dealt with according to law.

Joseph Borger
Special Agent
United States Secret Service

Sworn to before me this
22nd day of January, 2010

ge